for 934 dollars 66 cents, which was entered in the second action, and the first discontinued, and in the third suit a verdict was given for the defendant.

The Commissioners of Philadelphia county *against* ISAAC SNOWDEN, Treasurer of the same county.

Express negative words are necessary to oust courts of justice from making rules of reference, in matters of mere account where the parties consent to a submission.

Mr. Ingersoll for the defendant, moved the court to appoint referees to adjust and settle the accounts of the defendant, as treasurer of the county, for a number of years.

Mr Rawle, for the commissioners, admitted that the accounts were of a very complicated nature, and required much time and patience in the investigation. His clients were not averse to a submission, but he expressed his doubts, whether the same could legally be done consistently with the act of 13th March 1791, which required the court " to direct an issue to be tried by a jury during a next term, upon whose verdict final judgment shall be entered." 3 Dall. St. Laws 35, § 5.

By the Court. There seems no reason for the doubt , if the parties consent to the submission. In accounts of a long standing, depending on a great variety of facts, it is almost impossible to do complete justice by a jury trial, and we have frequently experienced the necessity of references, after the court have delivered their sentiments on particular points of law. The defalcation act of 1705, declares "the award of referees mutually chosen and approved of by the court, to have the same effect, and to be as available in law as a verdict given by twelve men." Express negative words appear necessary to oust courts of justice from making such rules of court, in matters of mere account, where the parties consent to a reference.

Referees appointed.

ALEXANDER ANDERSON *against* SAMUEL HAYES.

An agent shall not in general establish his authority by his own oath. Where evidence does not support the declaration, court will reject it.

CASE. The plaintiff declared, for that whereas on the 16th March 1792, at Philadelphia county aforesaid, it was agreed between the said Samuel and Alexander, that the said A should sell and transfer to the said S. five half shares of the bank stock of the bank of the

United States on the 1st day of May then next following ; and that the said S. should on the 1st day of May aforesaid, accept from the the said transfer of the said five shares of the bank stock of the bank aforesaid; and should pay to the said A. at and according to the rate of 100 per cent advance, being 2000 dollars for the said five half shares of the bank aforesaid, on the said 1st day of May aforesaid and there upon, in consideration that the said A. then and there at the special instance and request of the said S. undertook, and then and there faithfully promised the said S. that he the said A. would well and truly perform all and every thing contained in the agreement on his part to be performed, he the said S. then and there undertook and faithfully promised the said A. that he the said S. would well and truly perform, and fulfill all things contained in the agreement on the part of the said S. to be performed and fulfilled. And the said A. in fact says, that the usual place for the transferring of the bank stock aforesaid, from one to another, at the time and times aforesaid, was and now is, and ever since hath been at the bank of the United States, situate in Carpenter's hall, in the city of Philadelphia, in the county aforesaid, and that the said A. on the said 1st day of May in the year aforesaid came to the said bank of the United States, at the county aforesaid and there remained, and was then and there ready to transfer to the said S. the said five half shares of bank stock aforesaid, according to the form and effect of the said agreement, and he the said A. then and there offered and tendered, at the county aforesaid, to transfer the bank stock aforesaid to the said S. according to the form and effect of the agreement aforesaid : nevertheless, the said S., not regarding the said promise and undertaking made as aforesaid, came not to the bank aforesaid on the said 1st day of May in the year aforesaid, at the county aforesaid either by himself or an other person, to accept a transfer of five half shares of bank stock aforesaid from the said A., and to pay the said A. at the rate of 100 per cent. advance, being 2000 dollars for the said five half shares, according to his promise and undertaking aforesaid ; nor hath the said S. at any time since accepted from the said A. the transfer aforesaid, nor paid him the said A. for the same at the rate of 100 per cent. advance, be ing 200 dollars for the said five half shares, nor any penny thereof, although often required, but the same to do hitherto hath altogether refused and still doth refuse, to the damage, &c.

The plaintiff, in support of his declaration offered John Stille, jun. as a witness, to prove that he made the contract declared

on, as the plaintiff's agent, and by virtue of his orders; and also a certain written instrument in these words:

" On the 1st May next, I promise to receive of Mr. John Stille, jun. five half shares of the bank stock of the United States, and pay him for the same at the rate of 100 per cent. advance, being 2000 dollars for the said five half shares.

SAMUEL HAYES.

Philadelphia, 16th March 1792."

This testimony was excepted to by Messrs. Thomas and J. B. M'Kean for the defendant.

A former suit has been brought on this contract by Stille, as the supposed principal therein, and tried in this court within these three years past, when the plaintiff became nonsuit. He would now personate a different character, and to make himself a witness, affects to be considered the agent of Anderson. One cannot be permitted to blow hot and cold at the same time. 1 Term Rep. 387. The bringing of an action may determine the party's election. The ground once taken cannot be shifted in a subsequent suit. 2 Term Rep. 289 290. The assignees of a bankrupt may either affirm or disaffirm the contract of a bankrupt on the eve of his bankruptcy, yet if they do affirm it, they must act consistently throughout; it must be pursued through all its consequences. 4 Term Rep. 216, 217. The assignee of a term declared on as such, is not liable for rent accruing after he has assigned over, though it be stated that the lessor was a party executing the assignment, and agreed thereby, that the term, which was determinable at his option, should be absolute. He has concluded himself by declaring against the defendant, as assignee. Doug. 767, 2d. ed. Anderson was not known in this contract, nor was he responsible for a breach. Stille in his counter contract of the same date, engaged to make the transfer of the stock, and became personally liable thereby. This materially distinguishes the present case from those of agents or factors.

The declaration does not pursue the written contract, but is materially variant therefrom. The contract is in fact between other parties, than those who now appear upon record.

Messrs. Ingersoll and Tilghman for the plaintiff answered, that a contract by an agent or factor bound their principals on general grounds. It is of no consequence whether the principal be disclosed at the time or not. So it is as to secret and dormant partners in trade. The sale of a factor creates a contract between the owner and buyer; and therefor if a factor sell for payment at a future day, if the owner give notice to the buyer to pay him and

not the factor, the buyer will not be justified in afterwards paying the factor. Bull. 130. (edit. 1785.) If money arising on the sale of goods consigned to a factor have been invested in other goods, these shall be deemed to belong to the estate of the constituent. 1 Salk. 160. So if the factor has taken notes on the sale of the merchandise. 1 Atky. 234. Espin. 570. The same points have been determined in Pennsylvania in Price *v.* Pollard's assignees, and in M'Carty *v* Nixon. On a sale of goods on credit by a factor, he may either sue in his own name or in the name of his principal. 1 Atky. 248. In a late suit in the Supreme Court of the United States, (Livingston *v.* Swanwick,) a recovery was had on an engagement signed by the factor, Samuel Aderson, in a contract similar to the present. [But note, in that case, Anderson engaged that Swanwick should do certain acts, and Swanwick immediately after adopted the acts of his agent.]

No election has been determined by bringing the former suit. A factor after commencing an action for goods sold by him in that capacity, may become nonsuit, and afterwards may institute a new suit in the name of his principal. There is no greater hardship in such a proceeding, than in the common case of one commencing a suit, bringing it to trial, suffering a nonsuit, and then renewing the action. The law gives the party suing that privilege. A grantee when a bare trustee may be a witness to prove the deed to himself. The exception against Stille does not go to his competency; this verdict cannot be given in evidence, either for or against him. The jury will judge of his credibility.

As to the cases cited by the defendant from 1st and 4th Term Reports there was an absolute inconsistency between the suits brought; they could not stand together. In one, the party is supposed to be a tenant, and in the next breath a trespasser; in the other the assignees of the bankrupt affirm his contract, and to succeed in the second suit, disaffirm it. The same absurdity does not follow in the case before the court.

There is no variance between the declaration and the written instrument, if the authority of Stille as the agent of the plaintiff, is established by proof. *Qui facit per alium facit per se.* If this proof be not given, the court may direct a nonsuit for the variance, but will not prevent the evidence from going to the jury.

The court expressed their opinion, that Stille could not be considered in this business as a bare trustee. The engagement was personal and in his own name, and he was responsible for a breach thereof. It would in general be highly dangerous to permit an

agent to establish his authority by his own mere oath. There could be no security against evil men on the adoption of so broad a principle, and under the circumstances of the present case, Stille cannot be received as a witness.

This action is a special assumpsit, without any other general count. The rule in such suits is, that the promise must be proved, expressly as laid. Bull. 139, 145. Espin. 138 Hardw. Cas. 309. 1 Term Rep. 447. 4 Term Rep. 316. Had there been a general count in the declaration, it might have varied the case. Doug. 628.

Courts of justice are bound to go according to the *allegatate probata*. Gilb. Law Evid. 190. No evidence ought to be admitted but to the very point in issue. 3 Blackst. Com. 367. 1 Burr. 304. On what ground should the court permit written evidence of this kind to be read to the jury, when on the face of it they are bound to pronounce that it does not support the declaration? The written instrument therefore must be overruled.

Verdict for the defendant; but the plaintiff's counsel took a bill of exceptions to the opinion of the court.

———•◆•———

THOMAS HARRIS and JOSEPH PRICE *against* JOSEPH MANDEVILLE, surviving partner of CHARLES CARROL. JOHN M'GWIRE *against* same defendant.

[S. C. 2 Dall. 256 ]

In the case of British subjects, a discharge by the bankrupt laws of England will protect the person of the bankrupt in this state.

MR. HEATLEY for the defendant, moved to enter exonereturs on the bail pieces, in both actions.

It was admitted that all the parties lived in England, and that the defendant was duly declared a bankrupt there, and had obtained his certificate of conformity. A discharge by the law of one country will be a discharge in another. 2 Stra. 733. The present suit must be fruitless ; for if after the assignment of a bankrupt's estate, a creditor knowing it and residing in England, attach the money of the bankrupt abroad, the assignee may recover it in an action for money received to their use. 4 Term Rep. 182. The case of Ballantine v. Golding, (Cook's Bankr. Law, 347, 1st edit.) is expressly in point. So is Miller v. Hall. Dallas 229. So was Crafton v. Coulson, lately in France, wherein it was determined that the assignees of a bankrupt should prevail against attachment creditors.